Weir v. The St. Paul, Stillwater & Taylor's Falls Railroad Co.

FREDERICK WM. WEIR

*vs.*

THE ST. PAUL, STILLWATER & TAYLOR'S FALLS RAILROAD CO.

A railroad corporation organized under the general law found in chapter 34, General Statutes, can lawfully take private property for the purposes of its road, by proceeding in accordance with the provisions of said chapter.

The state, as a sovereign state, possesses the eminent domain as an attribute, and a necessary attribute, of sovereignty. The eminent domain is the superior right to apply private property to public uses. There is nothing in the term "eminent domain" which implies any restriction upon the *manner* in which the power thus designated is to be exercised. Neither does the constitution contain any restriction as to the *manner* of exercising the eminent domain, except as to the matter of compensation.

The legislature, representing the state, is competent to enact laws under which the eminent domain may be exercised by a private corporation.

It is competent also for the legislature, by general law, to authorize the formation of private railroad corporations, and to provide that such corporations may for themselves select routes upon which to build railroads, and having made such selection proceed to take and obtain land needed for the purposes of such railroads by an exercise of the eminent domain.

The question as to the *manner* in which the eminent domain shall be exercised addresses itself to the legislature as a question of propriety, fitness, and expediency, rather than as a question of power.

Sundry specific objections made to the validity of chapter 34, General Statutes, (the general corporation act,) considered and disposed of.

The "benefit" which, under section 19 of said chapter, is to be deducted from the damages arising from the taking of the land for the purposes of a railroad, is not such general benefit as is shared by the community at large, but the benefit peculiar or special to the particular land owner, as the same is defined in numerous decisions of this court.

The law considered in Langford v. Com'rs Ramsey county, 16 Minn. 378, distinguished from chapter 34, Gen. Stat.

Whether the owner of property taken for public uses is entitled, as a matter of constitutional right, to have the compensation to be paid him determined by the verdict of a jury, is not determined in this case. If he is not so entitled, the legislature in giving an appeal from the award of commissioners to the district court, may, without violating the constitution, require the appellant to file a bond in order to secure his appeal. If he is so entitled, the right of appeal to the district court, where a jury trial may be had, is secured by sections 22 and 23 of chapter 34, Gen. Stat.; and section 24, which requires the appellant to file a bond with sureties, may be treated as nugatory.

State v. Everett, 14 Minn. 439, distinguished from this case.

Section 23 of chapter 34, aforesaid provides, in substance, that the construction of a railroad shall not be delayed, hindered or prevented by an appeal; "provided the corporation execute and file with the clerk of the court in which the appeal is pending, a bond to be approved by said clerk, with *sufficient* sureties, conditioned that the person executing the same shall pay whatever amount may be required by the judgment of the court therein, and abide any rule or order of the court in relation to the matter in controversy." *Held*, that the bond thus provided for is to be regarded as *securing* the compensation to which the land owner is entitled.

This action was brought in the district court for Washington county, and the relief asked for in the complaint is, that an injunction issue against the said railroad company, and certain other defendants who are contractors, &c., enjoining them from constructing the railroad of said company upon the land of the plaintiff. The injunction was granted by the district court, and from the order granting the same the defendant appeals to this court. The case is fully stated in the opinion.

JOHN B. & W. H. SANBORN, for Appellant.

CASTLE & MARSH, for Respondent.

Weir v. The St. Paul, Stillwater & Taylor's Falls Railroad Co.

*By the Court.*—BERRY, J.—Plaintiff complains in this case that the defendant, The Saint Paul, Stillwater and Taylor's Falls Railroad Company, has entered upon certain lands of which plaintiff is owner in possession, and has surveyed and located, and has commenced to construct, and is still engaged in constructing, and declares its intention to continue to construct and to operate when constructed, a line of railroad thereon; that said entry of defendant, and the making and constructing of said railroad are without any authority of law, and in violation of the rights of the plaintiff; that defendant has so entered, &c., under a pretended authority to exercise the right of eminent domain and under a pretended authority claimed to be conferred by chapter thirty-four of the General Statutes, and not otherwise; that the political question as to whether the taking of the plaintiff's lands, or any lands for the use and benefit of said railroad is for the public use  *   * has not been passed upon   *·    *    ·*    by the legislature of the state of Minnesota, nor by any authority competent to do so; nor has the legislature or any competent authority determined or decided in any way that the proposed railroad would be    *    *    *    a public benefit, nor that there is any necessity for the taking of the lands of the plaintiff, or any lands for said enterprise.   The relief demanded is an injunction restraining defendant, and persons acting under defendant, from entering upon plaintiff's said land to construct and operate said railroad.   The answer denies that defendant has entered upon plaintiff's said land, or is constructing its railroad thereupon without authority of law, and avers that defendant is a corporation duly organized and in the full exercise of corporate powers, and fully vested with the franchise of way for public use, under and by virtue of chapter thirty-four of the general statutes and amendments, and chapter sixty-four, of the special laws of 1871.   The answer further

avers that defendant is engaged in constructing a railroad from Saint Paul via Stillwater to Taylor's Falls; that in constructing the same it became necessary to take a portion of plaintiff's land for road-bed, excavation, and fillings; that as soon as it was ascertained what portion of said land would be required in the construction of said road, defendant applied, as provided by chapter thirty-four aforesaid, to the judge of the district court for the county of Ramsey, for the appointment of commissioners to assess the damages which would result to plaintiff from the appropriation of his property to the purposes aforesaid, as well as to assess the damages resulting to other persons from similar appropriations; that commissioners were appointed by said court, and the time and place of their first meeting designated; that having given notice of their said meeting by three weeks' publication, and by personal notice served upon plaintiff more than five days before said meeting, (plaintiff being a resident of the county in which the land aforesaid was situate) said commissioners proceeded to assess, and did assess, the damages resulting to plaintiff as aforesaid, at one thousand dollars; that said commissioners filed their report, with other necessary papers, in the office of the clerk of the district court aforesaid, and caused personal notice of such filing to be served upon the plaintiff. The answer further avers that defendant tendered to plaintiff one thousand dollars in full payment of the damages assessed as aforesaid; that plaintiff refusing to receive the same, said sum was deposited with the clerk of said district court; that thereafterwards plaintiff appealed from said award and report of the commissioners to said district court, which appeal is pending and undetermined; and that defendant has executed and filed with the clerk of said court a bond as provided by section twenty-three, chapter thirty-four, General Statutes. In conclusion, the answer avers that defendant has used due diligence to

Weir v. The St. Paul, Stillwater & Taylor's Falls Railroad Co.

have the damages resulting from the construction of its road determined as prescribed by law, and has always been ready to pay the same when determined.   These matters which we have thus stated in brief, are so set out in the answer as to show by specific allegations a compliance on the part of defendant with each and all of the provisions of chapter thirty-four, applicable to proceedings of this kind.

Defendant having been brought in upon an order to show cause, a hearing was had in this case upon the complaint and answer in the district court for Washington county, and an injunction having been awarded, the case is here upon appeal from the order awarding the same.   Very many questions are raised and discussed by counsel which become unimportant in the view which we take of the case, and which it will therefore be unnecessary for us to consider.

The main question, and that which goes directly and squarely to the merits of this controvery, is:   Whether a railroad corporation organized under the general law found in chapter thirty-four, General Statutes, can lawfully take private property for the purposes of its road, by proceeding in accordance with the provisions of said chapter?

Among other things, title one of said chapter enacts that any number of persons, not less than five, may associate themselves and become incorporated for the purpose of building, improving and operating railways, and all works of internal improvement which require the taking of private property or any easement therein.   After prescribing the mode of becoming incorporated, &c., section thirteen enacts that any corporation organized under the provisions of said title, may obtain the right of way over and across the lands needed for the construction of any railroad, and all necessary sites and grounds for depots, shops and other buildings requisite for the proper carrying on of the business to be transacted, by

proceeding as in this title provided. By section fourteen it is provided that the corporation shall present to the judge of the district court in any county through which said railroad line runs, a petition setting forth a description of the enterprise to be prosecuted, the *termini* thereof, the counties through which the same is to run, and a general description of the land, property and real estate which it will be necessary to appropriate, take or use for the purposes of said enterprise, together with the names of the owners of any such property, if known. By section fifteen, upon the presentation of such petition the judge shall appoint three disinterested residents of any of the counties named in said petition, commissioners to meet at some point on the line of said improvement on a day specified by said judge, and to enquire touching the matters contained in said petition. Section sixteen authorizes the commissioners to adjourn from day to day, and to such places on the line of improvement as they deem proper. By section eighteen, at least five days' notice of the first meeting of said commissioners is required to be given, in all cases, except that non-residents of the counties through which the road is to be constructed may be notified by publication. Section nineteen requires the commissioners to meet at the time and place mentioned in the notice, and to proceed to examine the line of railroad, and the lands, property, or real estate which will be damaged, taken, appropriated or used by or for the purposes of said enterprise, and described in said petition, and shall hear the allegations and testimony of all parties interested, and proceed to make in each case a separate assessment of damages to each person, &c., &c., and shall determine and appraise to the owners of said land, &c., proposed to be taken, the amount of damages arising to them respectively, from the taking thereof, after making due allowance for any benefit that such owners may respectively derive from the railroad aforesaid. Section

Weir v. The St. Paul, Stillwater & Taylor's Falls Railroad Co.

twenty makes it the duty of the commissioners, within three months after completing their examination, &c., to file their report and other documents, together with a map showing the route of the railroad, in the office of the clerk of the court to which application for their appointment was made, and to give the same notice of the filing of said report as of their first meeting. Section twenty-one prescribes the mode of paying the damages, and the effect of such payments in estopping the parties receiving the same from all further claims or proceedings in the premises; and further provides that payments to persons refusing to receive the same when tendered, shall be made by depositing the same with the clerk of said court, to be paid out under the direction of the judge thereof, such deposit to have the same effect as aforesaid. Section twenty-two provides that appeals from the assessments made by the commissioners may be taken and prosecuted in the court where the report of said commissioners is filed, by any party interested, and a written notice of such appeal shall be served upon the appellee, in 'the same manner as a summons in a civil action is served; such notice to be given at least twenty days before the hearing, and the appeal to be taken within thirty days from the time of notification of the filing of the report. By section twenty-three, it is enacted that the construction of such road, or the prosecution of such improvement, shall not be hindered, delayed or prevented by the prosecution of any appeal, provided the corporation execute and file with the clerk of the court in which the appeal is pending, a bond to be approved by said clerk, with sufficient sureties, conditioned that the persons executing the same shall pay whatever amount may be required by the judgment of the court therein, and abide any rule or order of the court in relation to the matter in controversy. Section twenty-four provides that the " appellant shall file with the clerk aforesaid, a bond with sureties

(to be approved by said clerk,) in double the amount of the assessment appealed from, payable to the state for the use of all persons interested in the condition thereof, in which bond the proceeding appealed from shall be recited, with condition for the due and speedy prosecution of said appeal, and to abide the judgment that may be rendered therein, and pay the costs of the appeal, if adjudged so to do by the court in reference to the matter in controversy." Subsequent sections of the chapter, relating to the mode of trying appeals, &c., &c., need not be referred to, as no question concerning them arises in this case.

The respondent contends that the main question presented by this case, and before stated, must be answered in the negative: that is to say, that a railroad corporation organized under the general corporation law, cannot lawfully take private property for the purposes of its road by proceeding in accordance with the provisions of such general law. That the eminent domain may be properly exercised to take private property for public uses, by appropriating the same to railroad purposes, and that the state may for such purposes delegate the right to excercise the eminent domain to a railroad corporation,—being a private corporation charged with public functions, is settled law, and is not questioned. But respondent contends that it is not competent for the legislature by a general law to authorize the taking of private property for the purpose of constructing a railroad wherever a railroad corporation, formed under such law, may determine. His position is, that while such corporation may exercise the right of eminent domain, under the delegated authority of the state, the question as to the necessity of taking private property for public use is a political question, which must first be decided " in each particular case " by the legislature, and that " then the authority to take may be delegated by a general or a

Weir v. The St. Paul, Stillwater & Taylor's Falls Railroad Co.

special law ;" but as illustrating his meaning, the counsel refers to the common practice of granting special charters " with the object for which the incorporation was created in view, and in most cases naming the initial point, the general course, and the *termini* of the railroad to be constructed." The state as a sovereign state possesses the eminent domain as an attribute, and a necessary attribute, of sovereignty. It is defined to be " theright to resume the possession of private property for public use :" [*Per Chancellor Walworth in Beeckman vs. The S. & S. R. R. Co., 3 Paige, 45 ; and in Bloodgood vs. M. & H. R. R. Co., 18 Wendell, 13,*] or, as the right to take private property for public purposes ; [*Buffalo & N. Y. R. R. vs. Brainard, 5 Selden, 100,*] or as a superior right to apply private property to public use. [1 *Redfield on Railways* § 63.] There is nothing then in the term " eminent domain," which implies any restriction as to the manner in which this power of the sovereign to take private property for public uses may be exercised. If there are any restrictions as to the manner of its exercise, they must be found then in the constitution; for nothing of less authority than the organic and fundamental law which lays out the very frame of government could impose them. But the constitution contains no such restriction, except as to the matter of compensation, which is not here important. There is no reason, then, why the legislature, representing the state, may not enact laws by which the eminent domain may be exercised by a private corporation. [*Beeckman vs. S. & S. R. R. Co., supra ; Bloodgood vs. M. & H. R. R. Co., supra ; Buffalo & N. Y. R. R. Co., supra ; Boston W. P. Co. vs. Boston & Worcester R. R. Co., 23 Pick. 360.*]

Nor is there any reason why the legislature may not by a general law authorize the formation of private corporations for the construction of railroads. Nor is there any greater reason why the legislature may not, by a general law, provide

that any such corporation may for itself select a route upon which to build a railroad, and having selected it, may proceed to take and obtain land needed for·its purposes, by an exercise of the eminent domain. These propositions follow, inevitably, from the propositions before established, to-wit : that the state possesses the eminent domain, and that the manner of its exercise is, except as to compensation, unrestrained. It is no objection to this conclusion to say, that the legislature cannot do this, because it cannot delegate to another the authority delegated to itself. Its authority is to *legislate*, to *pass laws*, and the passage of the general laws spoken of, by virtue of which private corporations are authorized to exercise the eminent domain, is in no sense a delegation of this authority.

From the foregoing consideration it follows, that the question as to the *manner* in which the eminent domain shall be exercised, addresses itself to the legislature as a question of propriety, fitness, expediency, rather than as a question of power. And in accordance with this view of the case, it is held to be competent for the government, in its discretion, to exercise the eminent domain through its public officers, or agents, or through public or private corporations, or private individuals. (See cases, *supra*.) Upon this theory general railroad laws have been passed in our own, and many sister states. These general laws differ from one another in detail, but to us they all seem to rest upon the same general principle of the right of the government to exercise the eminent domain through the medium of private corporations. So, too, as a general, if not an universal rule, the special railroad charters which were granted by the legislature of the territory of Minnesota, and under which almost all the railways in the state have been built, must be supported upon the same theory.· So also must the mill dam law, chapter thirty-one, General Statutes.

Plaintiff's counsel argues, with much earnestness, that in

our general railroad law, (chapter thirty-four, General Stat-
utes,) the legislature has gone farther than in other states, and
too far, because it has left the whole matter of the location of
railroads to the respective corporations; while in other states
it is customary for the legislatures to pass upon the question
of public necessity or public use, by designating the *termini*
of the road, or by something equivalent. This would not,
however, seem to have been the course taken in Illinois or in
Ohio, or some other states, in authorizing the construction of
railroads under general laws. But whatever may have been
the usual course of legislation, we think there is no difference
in principle between a law which permits a railroad company
to exercise the power of condemning land for its purposes, on
a route selected by itself, *termini* included, and a law which
permits a company to exercise the same power on a route, all
of which, with the exception of the *termini*, is selected by such
company. The legislature no more, in the latter, than in the
former, passes upon the necessity or propriety of taking any
particular piece of private property for public uses, unless pos-
sibly at the *termini*.

We doubt, however, whether many instances can be found
in which the precise location of the *termini*, even, has been
fixed by the legislature. Certainly in this state whenever the
*termini* has been prescribed at all, it has been done in very
general terms, and so as to leave the company at liberty to
select *termini* at any point in a considerable tract of country.

It seems to us, then, that the distinction taken by the coun-
sel cannot be sound, and we see no reason why it was not
competent for the legislature in its discretion to leave the
whole question as to the *termini*, as well as the route of the
road, to the company. The legislature might very properly,
(as it seems to us,) be influenced in their action in this matter
by considerations like those referred to by Chief Justice Shaw

in Boston W. P. Co. vs. B. & W. R. R. Co. *supra;* when speaking of the authority of the legislature to leave the location of the route of a railroad between its *termini* to the company, he says : " So far as the objection is that the power is delegated to the corporation, instead of being exercised by county commissioners or any other public body, it is rather a question of propriety and fitness than one of power. In the present case we think that the interests of the corporation and those of the public were so nearly coincident, it being plainly for the advantage of both that the shortest, safest and cheapest route should be chosen, that the power might be safely intrusted to a corporation thus constituted. This mode of exercising the right of eminent domain is warranted by numerous precedents, both in our own commonwealth and in most of the other states of the union." So in Buffalo & N. Y. R. R. vs. Brainard, (*supra,*) it is said : " The legislature has the undoubted authority to provide for the incorporation of railroad companies by a general act, * * and it may without doubt lawfully declare that all lands taken for the construction of their roads shall be deemed taken for public use * * * The objection that the power to determine when and where the roads shall be built, is confided to the corporation instead of being exercised by the legislature or confided to some public officer or body, seems to me to present rather a question of propriety and fitness than one of power. The interests of the corporations and of the public, so far as the location and construction of their road are concerned, are so nearly identical that the power of location and the time of construction may be safely intrusted to the corporations. It is not perceived that these companies can have any inducement to invest their capital in the construction of roads either when or where the public interest does not require them, as returns can be expected from their investments only from the construction of

Weir v. The St. Paul, Stillwater & Taylor's Falls Railroad Co.

roads upon such routes as the public demands will warrant and sustain." *See also Giery vs. C. W. & Z. R. R. Co.,* 4 *Ohio State,* 325; *C. B. & Q. R. Co. vs. Wilson,* 17 *Ill.* 125. In view of such considerations, and others of a kindred nature, we think the legislature of this state, looking at the question of the manner in which it was, on the whole, most expedient that the eminent domain should be exercised, might well come to the conclusion that it should be exercised as provided in the general law under examination. The law may properly be regarded as a general determination on the part of the legislature that it is proper to exercise the eminent domain for the purpose of constructing a railroad, and as leaving the question *where* the public interest required that a road should be built, to be determined by the interest of those who could have no interest in building it where it is not required. As a practical method of determining a practical question, could the legislature do better?

Upon this branch of the case we are, then, against the plaintiff, and our conclusion is that it is competent for the legislature by a general law to authorize a railroad corporation to construct a railroad in such place as such corporation may determine for itself, and for such purpose to exercise the eminent domain. We are not to be understood as holding, however, that under chapter thirty-four, General Statutes, (the act under consideration,) railroad corporations are authorized to take land by condemnation at their pleasure. Section thirteen only authorizes them to obtain the right of way *needed,* &c., and all *necessary* sites and grounds for depots, &c., &c.. *See Wilkin vs. First Division St. P. & P. R. R. Co.,* 16 *Minn.* 271; *C. B. & Q. R. Co. vs. Wilson, supra; Railroad Co. vs. Blake,* 9 *Richardson,* (*South Carolina,*) 228; *Giery vs. C. W. & Z. R. Co., supra.*

This brings us to the second branch of the case, in which

the plaintiff contends that even if it be admitted to be competent for the legislature by a general law to authorize companies organizing thereunder to take private property for railroad purposes, it has not so done in chapter thirty-four, General Statutes, under which the defendant justifies. And counsel urges that said chapter is "defective and unconstitutional," for several reasons. "First: It does not provide that the proceedings had for the taking or damaging real estate shall be had or taken in the county or judicial district in which the real estate is situate. Second: It does not provide that the commissioners shall be appointed by, or their award or report filed in, a court which would have jurisdiction of the subject matter under the laws of the state, but that if the corporation proposed to run its railroad from one end of the state to the other, the court of any county through which the proposed route lay, could appoint the commissioners, and thereafter all proceedings shall be had in said court." Admitting that the law is open to these objections, and that it is therefore "defective," in the sense of being unfair and unjust to the land owner, it does not follow that it is unconstitutional; and we are not directed to, nor are we aware of, any provision of the constitution which is infringed by the law on account of these objections. If these objections do not make the law unconstitutional, they must be addressed, not to this court, but to the legislature.

The third exception taken to the law is that "It does not provide for an adequate notice to property owners who reside in this state, but not in the counties through which the road passes, or non-residents, by having the notices of meeting published in *any* paper published in *any* county through which the road is to pass." As to this objection, it is enough to say that the plaintiff is not in a position to raise it, since he appears from his complaint to have been an occupant of his

land, and of course a resident of the county in which the same was situate; and since it further appears from the answer that notice of the meeting of the commissioners was served upon him personally, as required by law in such cases. The fourth objection to the law is that "It does not provide for an adequate personal notice of the time when, and place where, the commissioners will meet to consider and determine the amount of damage to *each property owner.* It only provides for notice to be given of the time and place of *the first meeting* of the commissioners, which might be four hundred miles from the place of residence of the property owner residing upon land taken." This objection hardly does justice to the law, which provides that at the time and place fixed by the judge and mentioned in the notice, the commissioners shall meet and proceed with their examination, and that they may adjourn "from day to day, and to such places on the line of such improvement as they deem proper." But as with regard to the first and second objections, the question is, "Does the fourth objection render the provisions complained of unconstitutional?" We know of no provision of the constitution to which this fourth objection renders the law obnoxious, and the counsel has cited none. And while it would seem that cases of great hardship might arise under this part of the law, we can only say, as before, that as long as the constitution is uninfringed the remedy is with the legislature.

The fifth objection urged is that "The rule of damages which the commissioners and court are required to observe in the assessment of damages, is contrary to the legal rule."

Section nineteen of the act provides that the commissioners shall determine and appraise to the owners of land proposed to be taken, the amount of damages arising to them respectively, from the taking thereof, after making due allowance for any benefit that such owners may respectively derive from

the railroad. Now, if the phrase "any benefit" were to be construed to include all the benefit which the land owner may receive, whether peculiar to him or common to himself and the whole community or neighborhood, the law would certainly infringe that provision of the constitution which requires compensation to be made for private property taken for public uses. See *W. & St. P. R. R. Co. vs. Denman, et al.*, 10 *Minn.* 267; *W. & St. P. R. R. Co. vs. Waldron*, 11 *Minn.* 515; *Carli vs. The Stillwater & St. Paul R. R. Co.*, 16 *Minn.* 260. But it is not necessary to impute to the phrase "any benefit" any such signification. It may well be taken to mean any benefit *such as is in its nature* proper to be deducted; that is to say, any benefit special to the land owner, and not shared by the community in common with him. Benefit in this sense might be deducted with perfect propriety as has several times been held by this court. (See cases *supra* for definition of the same.) And, as by a well settled rule, it is our duty to uphold an act of the legislature, if by reasonable construction it can be done, we are of the opinion that this is the sense in which the legislature must be taken to have used the phrase "any benefit" in this instance.

The plaintiff's sixth objection is that the law "does not provide that appeals may be taken to, or prosecuted in, any court, save the one in which the petition is first filed." As with regard to the first, second and fourth objections, so with regard to this, we need only say that it not appearing that the provision complained of is unconstitutional, any objection to it is for the consideration of the legislature.

The seventh objection is, that "No provision is made by which the property owner can be heard upon the appointment of the commissioners who are to assess his damages, the appointment of the commissioners being without notice to any parties, and all the proceedings relating to their appointment being *ex*

*parte.*" Counsel cites the case of *Langford vs. the Commissioners of Ramsey County,* 16 *Minn.* 375. A reference to that case will show, however, that the law there considered differs in essential particulars from that now under examination. There, not only were the commissioners appointed by the legislature in a case in which the public was to be regarded as an individual treating with an individual for an exchange, but the decision of the commissioners in that case was final, no appeal being allowed. In the case at bar the appointment of commissioners is made by a presumed impartial tribunal, and although no provision is made for notice to the land owners of the application for such appointment, an appeal to the district court is provided for, upon which a trial may be had before a jury. The case cited does not, then, support the counsel's objection, and in the absence of any constitutional provision upon which it can be founded, it must, like the others, be addressed, not to this court, but to the legislature.

The eighth and last objection is, that " the property owner is required to give a bond before he can have a hearing in court, even upon the award of the commissioners."

Whether the owner of property taken for public uses is entitled as a matter of constitutional right to have the compensation to be paid him determined by the verdict of a jury, is a grave question—a question of altogether too solemn importance to be determined except upon the fullest consideration and argument. As it has not been argued in the case at bar, and it is not indispensable that it should be determined at this time or in this case, in which it appears that it has already been secured by an appeal and bond filed under the statute, we shall not now consider or pass upon it. The necessities of this case only require us to say, that if the trial by jury is not a matter of constitutional right in proceedings of this kind, the legislature in giving an appeal from the com-

missioners to the district court may, without violating the constitution, require the appellant to file a bond in order to secure his appeal. On the other hand, if the right of trial by jury in these cases is guarantied by the constitution, that right is secured by sections twenty-two and twenty-five of the act under consideration. These sections provide for an appeal from the commissioners to the district court, and for a trial by jury therein. Section twenty-four, which requires the appellant to file a bond with sureties, as it would fetter the right of trial by jury, must in such cases be treated as nugatory. (*State vs. Everett*, 14 *Minn.* 439, and authorities cited.) These sections differ from the provisions of law considered in *State vs. Everett*, in the important respect that sections twenty-two and twenty-five of the act under examination are independent of section twenty-four, the latter not being attached to the former as a condition. Sections twenty-two and twenty-five may therefore properly be upheld, though section twenty-four be treated as nugatory.

This disposes of all the objections made by plaintiff's counsel to the act under which defendant justifies. It must be admitted that many of them may be addressed to the legislature with great force and propriety, as suggesting defects in the law which appear to be arbitrary and calculated to work hardship and practical injustice. But so long as the law infringes upon no constitutional right, we cannot interfere.

The judge before whom the hearing was had below, appears from the reasons filed by him, to have granted the injunction in this case mainly, if not altogether, upon the ground that the filing of the bond provided for in section twenty-three of chapter thirty-four, General Statutes, did not satisfy that provision of our constitution which declares that "private property shall not be taken for public use without just compensation therefor, first paid or secured." Section twenty-

Weir v. The St. Paul, Stillwater & Taylor's Falls Railroad Co.

three provides in substance that the construction of the road shall not be delayed, hindered or prevented by an appeal, " provided, the corporation execute and file with the clerk of the court in which the appeal is pending, a bond to be approved by said clerk, with *sufficient* sureties, conditioned that the persons executing the same shall pay whatever amount may be required by the judgment of the court therein, and abide any rule or order of the court in relation to the matter in controversy." The point upon which the court below appears to have allowed the injunction is not argued here, or, so far as we discover, alluded to, by plaintiff's counsel. But we are of opinion that it is not well taken. Saying nothing about the deposit of the award of the commissioners with the clerk, we think the bond is to be regarded as *securing* the compensation. The sureties are to be approved by the clerk, a presumed impartial officer, and we have no doubt that if the land owner was dissatisfied with them for good reasons, he could, upon an application to the court, compel the corporation to substitute such as would be in fact sufficient. If the statute is not as explicit as it should be in pointing out the *manner* in which the land owner may accomplish this, it is for the legislature to remedy the defect. But, unless something of the kind provided for is to be treated as securing the necessary compensation within the meaning of the constitution, it will be apparent at a glance that railroad enterprises of great public importance might be indefinitely delayed by a single land owner. This could hardly have been contemplated.

Our conclusion, then, is that a railroad corporation, organized under the general law found in chapter thirty-four, General Statutes, may lawfully take private property for the purposes of its road by proceeding in accordance with the provisions of said chapter. The justification set up in its answer by defendant in this case is therefore sufficient, and the order

allowing the injunction which was appealed from in this case, is accordingly reversed.