Central R. R. Co. of N. J. v. Pennsylvania R. R. Co.

The Central Railroad Company of New Jersey and others

v.

The Pennsylvania Railroad Company and others.

1. The fact that the property of an insolvent railroad company is under the charge of this court, does not in anywise secure to the company protection against lawful competition in its business, or secure for its property immunity against liability to lawful condemnation.

2. A general law authorizing any number of persons not less than seven to form a corporation to construct a railroad, does not exclude non-residents as corporators.

3. That the places from and to which the road is to be constructed must be specified, is sufficiently complied with by designating one terminus as "at or near Bergen cut."

4. The grant by the legislature of the power to exercise the right of eminent domain for the building of railroads for public use, to any persons who will undertake to construct them, leaving it to such persons to select the routes for themselves, is of itself a determination by the legislature that such roads are necessary or useful for the public.

5. It is undoubtedly within the power of the court (and it is its duty), where an abuse of the general railroad law is attempted by the unlawful application of its provisions to a private use, to restrain the unauthorized proceedings.

6. A corporation cannot, in its own name, subscribe for stock or be a corporator, under the general railroad law; nor can it do so by a simulated compliance with the provisions of the law through its agents as pretended corporators and subscribers of stock.

7. An attempt by a corporation to avail itself unlawfully of the general railroad law to build a railroad, will, on complaint of the party injured, be enjoined as an abuse of the law.

Bill for injunction. On order to show cause. On bill and affidavits annexed, and affidavits on the part of the National Docks Railway Company.

*Mr. B. Gummere, Mr. B. Williamson* and *Mr. J. D. Bedle,* for complainants.

*Mr. Leon Abbett,* for the mayor and aldermen of Jersey City.

*Mr. Isaac W. Scudder*, for the Pennsylvania Railroad Company.

*Mr. H. C. Pitney*, for the National Docks Railway Company.

*Mr. Sidney Ward* of New York, for the National Storage Company.

THE CHANCELLOR.

The bill is filed by the Central Railroad Company of New Jersey, and Francis S. Lathrop, receiver for the creditors and stockholders thereof, for an injunction to restrain the defendants, other than the city, from constructing a railroad from the line of the Pennsylvania Railroad at or near Bergen cut, to the National docks, upon any route or location across any of the lands or railway tracks of the Central Railroad Company, under or by virtue of the provisions of the general railroad law, and from taking and condemning, or instituting any proceedings to take or condemn, any lands or railway tracks of the Central Railroad Company, or to acquire the right of crossing those lands or tracks for the purpose of constructing a railroad across them, under the provisions of that act, and to restrain the city from granting permission to the other defendants to lay their road in Jersey City in such manner as necessarily to cross the main line and railways of the Central Railroad Company at grade.

The bill states that the Central Railroad Company is the absolute owner in fee of certain land in Jersey City therein described at length, which it lawfully acquired for its uses and purposes in the exercise of the public franchises granted to it, and that that land, or a large part thereof, is now in constant use for those purposes, and that all of the land is both necessary and convenient for the present and future due and proper exercise of its corporate franchises and functions, and in the transportation of passengers and

merchandise to the termini of its routes and branches, and for the yarding of its cars, and in the necessary storage of merchandise transported thereon, and in the shipping thereof to its destination, and for other like purposes; that the Pennsylvania Railroad Company is a foreign corporation existing under the laws of the state of Pennsylvania; that in 1873 it became possessed, as lessee (or grantee), of the railroads, franchises and property of the United New Jersey Railroad and Canal Company, and, among others, of the main line of the railroad extending from the Delaware at Trenton to the Hudson at Jersey City; that at that time its lessor (or grantor) had located its road through Jersey City, and exhausted by actual user, or lost by non-user, all of its chartered powers of relocating or changing its route there, and of constructing additional branches thereto, or making any new termini; that the Pennsylvania Railroad Company, under the lease, had no more power than its lessor (or grantor), and has acquired none since; that it has no corporate existence in this state, and no franchise to be a corporation here, except as such lessee (or grantee), and for the sole and exclusive purpose of performing the covenants of the lease or grant; that the National Storage Company is a private corporation, created under a special act of the legislature of this state, for the purpose of storing and transporting petroleum and other merchandise, and for other purposes incidental thereto, and although capable of holding lands for the purposes of its charter, it is expressly prohibited by it from storing petroleum within the territorial limits of Jersey City, and though it has become seized of a tract of land known as the National Docks, which is within the limits of that city, yet, because of that prohibition, it cannot lawfully hold or use that land to store petroleum thereon, or transport petroleum to it to be stored there, or demise or convey it to any other person or corporation for such purposes, or either of them; that it is an offshoot of the Pennsylvania Railroad Company, and under its control; that its capital stock is largely held by or in trust for per-

sons owning large interests in or largely concerned in the management of that company; that the Pennsylvania Railroad Company, or its managers and officers, have conceived the plan of constructing a new branch from the main line of the railroad leased to it, extending from at or near Point of Rocks to some point on Communipaw bay, and of locating and establishing a new terminus on that bay particularly as an outlet for its transportation of petroleum, and for procuring a place for the storage thereof, and has caused estimates and plans, or surveys, of such new branch to be partially made; that the want of legal power to make such extension, and the impossibility of obtaining a special grant for the purpose since the adoption of the amendments to the constitution of this state in 1875, have prevented the execution of the plan; but, recently, the company has attempted to execute the design under the general railroad law, and to that end has concerted with the Storage Company to construct the new branch to the latter company's line on the bay, and to use and occupy that land as a terminus; that the Storage Company has entered into the scheme, and that there has resulted therefrom the formation, under the general railroad law, of the corporation called The National Docks Railway Company, by certain persons mentioned in the bill, all of whom are officers and employes either of the Pennsylvania Railroad Company or the Storage Company; that the corporation is merely colorable, and that the real purpose is to enable the Pennsylvania Railroad Company to build the branch and thus do indirectly what it could not do directly; that the stock has not been subscribed for in good faith; that the articles are not in conformity with the provisions of the law, and are void for uncertainty in the designation of one of the termini of the projected railroad; that the money deposited in filing the articles of association under the provisions of the general railroad law was furnished by the Pennsylvania Railroad Company and the Storage Company, and that neither the corporators nor the National Docks Railway Company intend

to equip or operate the road, but that it is to be operated
and owned by the Pennsylvania Railroad Company.

The bill further states that no survey of the route or loca-
tion of the railroad has been filed; that all of the route and
locations which have been or may be proposed must cross
the land of the Central Railroad Company, and that the
road must necessarily occupy a part of the main line of
tracks of that company and numerous branches and sidings
thereof, at a short distance from the main terminus of the
Central railroad, and that it is intended that the projected
road shall cross them at grade; that over the main line of
tracks so to be crossed and taken, an immense volume of
passenger and freight traffic of the Central Railroad Com-
pany and its affiliated lines is constantly passing, and that
such crossing of the main line would greatly endanger the
safety of the passengers and freight transported thereon,
and greatly obstruct the company in the present and future
management of its business and in the construction of new
tracks, sidings and buildings necessary therefor, and work
irreparable injury; that the Central Railroad Company has
for many years been lawfully engaged in the business of
transporting petroleum from the city of Elizabeth and points
west thereof, to Communipaw bay, and has with much skill
and labor, and at large expense, built up and is enjoying a
large and remunerative business therein; that the Pennsyl-
vania Railroad Company and the Storage Company design,
by the colorable use of the general railroad law, to create
an unlawful competition with it therein; that the good will
of its business has been taken into the custody of this court,
and is now being administered under its direction; that the
complainants are entitled to be protected from the unlawful
combination and competition by this court; that the parties
concerned in the scheme of building the branch road intend
to take by condemnation a valuable part of the land and
franchises of the Central Railroad Company in the custody
and management of this court, without first applying to this
court for permission so to do; that such intended action

would be a contempt of court and violation of the settled principles of its administration, and that they should be enjoined accordingly; that the branch railroad is not, and will not in the future be, required by any public necessity, inasmuch as ample means for the transportation of petroleum is already provided by the main line of the Central Railroad Company and the branch therefrom to the National Docks, and, whenever additional facilities are needed, that company will promptly furnish them as they may be required, and that the branch is only to be used as a branch of the Pennsylvania railroad, and for the private use and benefit of the Pennsylvania Railroad Company.

The bill then presents various objections to the organization of the National Docks Railway Company under the general railroad law; it insists that three of the seven persons, the corporators mentioned in the certificate of incorporation, are not citizens of this state, and therefore are not " persons " within the true meaning of the act; that if the corporation be created within the fair construction of the act, and capable of taking the franchises and exercising the power of eminent domain thereby conferred, the act itself is a violation of the fundamental principles of constitutional government and law, and of the first subdivision of the first section of the fourth article of the constitution of th's state (which prescribes that the legislative power shall be vested in a senate and general assembly), because the power of determining that the necessity and occasion have arisen for divesting a citizen of this state of his freehold lands by the exercise of the power of eminent domain, is the highest prerogative power which can be exercised in a free state, and cannot be delegated by the legislature to private persons; that the power of eminent domain cannot lawfully be exercised, except upon previous lawful determination that the necessity and occasion have arisen for its exercise, and no such lawful determination has been made of the necessity and occasion of taking the lands and main line of the Central Railroad Company to construct the railroad described

in the articles of association, and that therefore the parties who propose to build the branch, cannot lawfully take or condemn that land or main line for the purpose of building the branch, and that the general railroad law, so far as it confers upon those parties the power of eminent domain over the lands and railways of the Central Company, is unconstitutional and void; that if the legislative power of determining before referred to could be lawfully delegated to private persons, it cannot be lawfully delegated—as it must be held to be under the general railroad law—to the persons who are directly interested in determining that the necessity and occasion have arisen, because they are thus constituted and appointed by the act judges in their own cause, which is a violation of the fundamental principles of constitutional government and law, and of the rights and privileges reserved to each citizen of this state; that if the legislative power of determining could be lawfully delegated to the same private persons who are directly interested in the determination, and in its results, the act denies to the owners of lands to be affected thereby, any right or liberty of being heard on the determination, and all right of procuring the determination to be judicially reviewed by due process of law for error in fact or in law; that if the delegation of the exercise of the power of determination to private persons be lawful, a resulting power and duty is conferred upon and is inherent in this court of supervising and controlling the location and construction of the branch between the termini specified in its articles of association, and of requiring it to be so located and constructed as to inflict the least possible injury upon the property, franchises and rights of the complainants; that the persons who propose to construct the branch intend so to locate it as that it shall be constructed across a large number of important streets in Jersey City, and across over two miles and a half of the territory within that municipality; that the transportation of petroleum on such a route, through a large and growing

city, will be perilous in the extreme to the houses along the route, and to the inhabitants thereof, and greatly obstruct the improvement of lots along and near the route, and greatly hinder the growth of the city; that the parties who propose to construct the branch intended to obtain from the mayor and aldermen of Jersey City authority to cross the streets of that city in such a manner that the branch will necessarily cross the main line of railways of the Central Railroad Company at grade, and so inflict unnecessary and irreparable injury upon the complainants, and that in the exercise by this court of its jurisdiction to supervise and regulate the location and mode of construction of a road between its termini, the corporation of Jersey City is interested.

The National Docks Railway Company has put in affidavits; one, that of its president, to the effect that it has finally decided to adopt a route for the branch, which is to cross the Central railroad about three hundred feet eastward of the round-house or locomotive-berth of the Central Railroad Company, and at an elevation above the tracks of the Central railroad at that point of about twenty-one feet, leaving a clear space of at least eighteen feet between the top of the rails of the Central railroad tracks and the under side of the truss of the contemplated viaduct, and that, at no time, has the company, or any other person, to his knowledge, contemplated building the railroad to cross the Central railroad tracks to the eastward of the round-house and engine-berth, at grade.

The other affidavit is made by the president of the Storage Company, who swears that the capital stock of the company is owned entirely by the individuals in whose names it stands; that, to the best of his knowledge and belief, none of it is owned or controlled, directly or indirectly, by the Pennsylvania Railroad Company, but that all the earnings, profits and emoluments of the Storage Company, and all its capital stock, belong actually, absolutely and in good faith to those individual stockholders in their own right,

and not in trust, directly or indirectly, for the Pennsylvania Railroad Company; that the Storage Company procured the corporators and stockholders of the National Docks Railroad Company to organize that company, and that the organization was made in the interest of the Storage Company, which has agreed and expects to advance, out of its own funds, all the means necessary to purchase the right of way for, and to construct the railroad. None of the defendants have answered.

The action of this court is invoked for the protection of the complainants against the construction, under the provisions of the general railroad law, of a railroad (for the transportation of petroleum) from the New Jersey Railroad at or near Bergen cut, to the docks of the National Storage Company in Jersey City.

The main grounds of the application are as follows: That inasmuch as the property of the Central Railroad Company is in the hands of this court, under proceedings in insolvency, and the road in question will, if built, cross the railroad and lands of that company, it is necessary to obtain the consent of this court to such crossing; that the enterprise, though nominally undertaken by certain individuals as corporators, is, in fact, the enterprise of the Pennsylvania Railroad Company, which has no right, either under the general railroad law or otherwise, to build the road; that some of the seven persons named as corporators in the articles of association are not citizens of or residents in this state, whereas it is insisted none but citizens of or residents in this state can lawfully be corporators under the general railroad law; that the articles of association are not in compliance with the law, because one of the termini of the proposed road is not designated with sufficient certainty, and that the general railroad law is unconstitutional because it confers the power of determining upon the necessity of exercising the right of eminent domain upon those who are to exercise the right.

The property of the Central Railroad Company is in the hands of this court, to be administered under the statute by virtue of proceedings in insolvency.

Incidentally, it is the duty of the court to protect, preserve and husband it, and the statute (*Rev. p. 196, § 106*), imposes the duty of operating the railroad for the use of the public while it is in the hands of the receiver. But the fact that its property is under the charge of this court does not in anywise secure to the company protection against lawful competition in its business, or secure for its property immunity against liability to lawful condemnation.

Its relation to other enterprises and the community is not essentially changed. If it be contemplated to take its land by condemnation, the consent of this court will, in deference to the tribunal and the orderly administration of justice, be sought, and in a proper case it will be accorded as a matter of course.

The general railroad law (*Rev. p. 925*) provides that any number of persons not less than seven, where the proposed road is less than ten miles in length, and not less than thirteen where the proposed road is ten miles or more in length, may form a company for the the purpose of constructing, maintaining and operating a railroad for the public use in the conveyance of persons and property, or for the purpose of maintaining and operating any unincorporated railroad already constructed for the like public use; and for that purpose may make and sign articles of association, in which shall be stated the name of the company, the number of years it is to continue, the places from and to which the road is to be constructed or maintained or operated, the length of the road, as near as may be, and the name of each county in this state through or into which the road is made or intended to be made, the amount of the capital stock of the company, the names and places of residence of seven directors of the company where the road is less than ten miles long, the names and residences of thirteen directors where the road is ten miles or more in length, a majority

of whom shall be residents of this state, who shall manage its affairs for the first year, and until others are chosen in their places; that each subscriber to the articles of association shall subscribe thereto his place of residence and the number of shares of stock he agrees to take in the company, and that, on compliance with certain conditions stated in the law, the articles may be filed in the office of the secretary of state, and that, upon tendering them to that officer to be filed, the persons who have so subscribed them, and all persons who shall become stockholders in the company, shall be a corporation by the name specified in the articles; and that every corporation formed under that act shall, in addition to the general powers set forth in the act "concerning corporations," have the powers granted by the general railroad law, among which is that of eminent domain, for the purpose of building its road, &c.

The complainants contend that the seven or thirteen persons mentioned in the law, who are to join in the articles of association, must be citizens, at least residents of or dwellers in this state, and that the legislature did not intend to confer the privileges upon others; that to construe the law so as to admit citizens of other states or foreigners to avail themselves of the benefits of the law, would subject the property of the citizens of this state, throughout its whole territory, to be taken against the will of its owners, upon compensation, for the advancement of the speculations in railroad enterprises, however wild and visionary, of those who have no interest in the state or its welfare. The legislature clearly did not intend to confine the advantage of the law to those who were citizens of or dwellers in this state. The language of the law is, " any number of persons, not less than seven, &c." The terms express no qualification. The law evidently contemplates that the minimum number may sometimes sign the articles, and that they will be the first directors, and the provision that a majority of the first directors shall be residents of this state is strong and con-

clusive evidence of the intention of the legislature. It may be added that the fact that the law provides that some of the directors shall be residents of this state, is evidence of itself that the attention of the legislature was drawn to the subject of residence.

The legislature has not attempted to make any discrimination in the law against citizens of other states. The term it uses is " persons." Citizens of other states are, by virtue of the provisions of the constitution of the United States declaring that the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states, entitled to all the privileges to which citizens of this state are entitled under the law.

It will be convenient to notice here the objection based on the designation of the termini of the projected road. It is insisted that while the specification of a terminus " at or near Bergen cut," which is more than a mile long, might, perhaps, be definite enough for a long line of road, it is by no means so for one only a mile and a half in length. The distinction does not appear to me to be well taken. The terminus in question is to be the junction with another railroad, and it is designated with sufficient definiteness for that purpose. In *State, M. & E. R. R. Co. pros.* v. *Hudson Tunnel Co., 9 Vr. 548*, the articles declared that the tunnel was " to commence at some convenient and eligible point upon the western shore of the Hudson river, and within or near Jersey City or Hoboken," and it appears not to have been regarded as a ground of objection in that sharply-contested case. See, also, *State, W. J. R. R. Co. pros.* v. *Receiver of Taxes of Camden, 9 Vr. 299.* In *Chicago B. & Q. R. R. Co.* v. *Chamberlain, 84 Ill. 333*, a designation of a terminus as " some eligible and convenient point in the county of Du Page, there to connect with the G. & C. U. Railroad," was held sufficient.

The objection made by the complainants to the general railroad law is, that it commits the determination of the necessity for the exercise of the power of eminent domain

to the persons who are to exercise it; whereas, it is urged it is the right of the person whose property is to be taken by the exercise of the power, to have the necessity determined upon by the legislature itself before his property is subjected to the exercise of the power. In other words, that the legislature must first pass upon and decide affirmatively the question whether the necessity for any particular public work exists, before private property can be taken by condemnation for it. It is an unquestionable principle of constitutional law that it is the province of the legislature to determine whether the necessity for the exercise of the right of eminent domain exists or not, and that its decision is not subject to judicial review. In *Tide Water Co.* v. *Coster, 3 C. E. Gr. 518,* the doctrine was enunciated by the court of errors and appeals as follows : "It is one of the legislative prerogatives to decide the important question whether an enterprise or scheme of improvement be of such public utility as to justify a resort for its furtherance to the power of taxation or eminent domain. Primarily the judiciary has no concern in such matter. And not only this, but if the public interest be involved to any substantial extent, and if the project contemplated can in any fair sense be said to be promotive of the welfare or convenience of the community, the legislative adoption of such project is a determination of the question from which there is no appeal, and over which no other branch of the government has any supervision whatever. Whether a road or turnpike, a bridge or a canal, will subserve public or private needs, are inquiries addressed exclusively to the law-making power, whose answer, according to the genius of our government, must be final and irreversible." The power of determining the necessity may be delegated. The familiar instances of the delegation to municipal corporations and to surveyors of the highways in this state, furnish an example and illustration ; and where the power is delegated to public or private corporations, or public officers or individuals, its exercise is no more subject to judicial review

32

than it would be if the legislature exercised it itself. *Iron R. R. Co.* v. *City of Ironton*, 19 Ohio St. 221; *Memphis Freight Co.* v. *Mayor &c. of Memphis*, 4 Cold. 419; *Bardstown & Lon. R. R. Co.* v. *Metcalfe*, 4 Metc. (*Ky.*) 200.

The grant by the legislature of the power to exercise the right of eminent domain for the building of railroads for the public use, to any persons who will undertake to construct them, leaving it to such persons to select the routes for themselves, is of itself a determination by the legislature that such roads are necessary or useful for the public. The legislature, in granting special charters for public improvements, such as railroads and canals, very rarely, if ever, expressly declared the existence of the necessity. It authorized the construction of the work and granted the franchises, including the power of condemnation. If the improvement was one of public necessity or utility, there could be no judicial inquiry as to the propriety of its action in giving the power to condemn. The protection which the property owner had under such charter, as contrasted with a general law, very often consisted substantially in the fact that the authority was confined to a particular enterprise, and the difference was unimportant when the termini of the road or canal were extremely indefinite; as in the instance of the charter of the Delaware and Raritan Canal Company, by which authority was given to construct a canal between the Delaware and Raritan rivers, leaving it to the company to fix the location (*P. L. 1824 p. 175*); or in that of the Morris Canal, where authority was given to construct a " canal to connect the waters of the Delaware river, near Easton, with the tide-waters of the Passaic river, and passing through the county of Morris " (*P. L. 1824 p. 158*); or in that of the Camden and Amboy Railroad Company, where the grant was to corporators not named (those who should subscribe the stock), of the rights, powers and privileges necessary to survey, lay out and construct a railroad or roads from the Delaware river, at some point or points between Cooper's creek and Newton creek in Glou-

cester county, to a suitable point to be by them determined on upon Raritan bay (*P. L. 1830 p. 33*). What could any particular land owner, whose property may have been taken for the public work, know, from such a charter, as to his liability to be affected by the charter, or the probability that his land would be taken ? That would depend on the route which the company might adopt for itself.

By the amendments to the constitution, the legislature was shorn of its power to confine the building of railroads to such enterprises as it should specially designate and approve. By these amendments (*Const., Art. IV, § 7, pl. 11*), the legislature is not only prohibited from passing special laws granting to any corporation, association or individual any exclusive privilege, immunity or franchise whatever, but also from passing special laws granting to any corporation, association or individual the right to lay down railroad tracks, and it is required to pass general laws providing for such cases. It therefore cannot, by special enactment, give to any corporation, association or individual the right to build a railroad, but the right is to be given by general law. If it cannot grant the right to build a railroad by special act, it cannot itself determine the necessity for the exercise of the right of eminent domain in any particular case. It must, therefore, delegate the power.

It is urged that it is contrary to natural justice, that the determination of the necessity should be left to those who are to exercise the right, because no one should be judge in his own cause; and that the legislature, therefore, must delegate the power to some court or commission. But if the constitution is silent on the subject, the action of the legislature is final on this head. Such is the view both of the courts and text-writers. In *Giesy* v. *C. W. & Z. R. Co., 4 Ohio St. 308*, the court held that no well-founded constitutional objection exists to committing the power of determining the necessity to those who are to exercise the power.

In *Weir* v. *St. Paul &c. R. R. Co.*, *18 Minn. 155*, it was held that there is no reason why the legislature may not, by a general law, provide that any railroad corporation may select a route for itself, upon which to build its road, and, having selected it, proceed to exercise the right of eminent domain to take the land necessary for the enterprise.

In *Buffalo and New York R. R.* v. *Brainard*, *9 N. Y. 100*, it was held that the legislature of New York had the un-doubted right to provide for the incorporation of railroad companies by a general act, and that it might, by legisla-tive enactment, give to them powers and impose duties almost exclusively of a public character, and in such cases it might, without doubt, lawfully declare that all lands taken for the construction of their roads should be deemed taken for public use. And the court says that the objection that the power to determine when and where the road shall be built is confided to the corporation instead of being exercised by the legislature or confided to some public officer or public body, seemed to present rather a question of propriety and fitness than one of power.

Said the court in *People* v. *Smith*, *21 N. Y. 595, 598:* " The necessity of appropriating private property for the use of the public or of the government is not a judicial question. The power resides in the legislature. It may be exercised by means of a statute which shall at once designate the property to be appropriated and the purpose of the appropri-ation, or it may be delegated to public officers, or, as it has been repeatedly held, to private corporations established to carry on enterprises in which the public are interested. There is no restraint on the power except that requiring compensation to be made."

In *C. R. I. & P. R. R. Co.* v. *Town of Lake*, *71 Ill. 333*, it was held that when the case is such that it is proper to delegate to individuals or a corporation the power to appro-priate property, it is also competent to delegate the author-ity to decide upon the necessity.

Says Judge Dillon (*Dillon on Mun. Corp.* § *465*): "Of the necessity or expediency of exercising the right of eminent domain in the appropriation of private property to public uses, the opinion of the legislature or of the corporate body or tribunal upon which it has conferred the power to determine the question, is conclusive upon the courts, since such a question is essentially political in its nature and not judicial."

Says Judge Cooley (*Cooley on Const. Lim. 538*): "The authority to determine in any case whether it is needful to exercise this power, must rest with the state itself, and the question is always one of strictly political character, not requiring any hearing upon the facts or any judicial determination. Nevertheless, where a work or improvement of local importance only is contemplated, the need of which must be determined upon a view of the facts which the people of the vicinity may be supposed best to understand, the question of necessity is generally referred to some tribunal, and it may even be submitted to a jury to decide upon evidence. But parties interested have no constitutional right to be heard upon the question unless the state constitution expressly recognizes and provides for it. On general principles the final decision rests with the legislative department of the state, and if the question is referred to any tribunal for trial, the reference and the opportunity for being heard are matters of favor and not of right. The state is not under any obligation to make provision for a judicial contest upon that question; and where the case is such that it is proper to delegate to individuals, or to a corporation, the power to appropriate private property, it is also competent to delegate the authority to decide upon the necessity for the taking."

Said Chief-Justice Shaw, in *Wellington* v. *Petitioners, 16 Pick. 87, 101:* "It is objected that there was no adjudication that the laying out of Cambridge common and the enclosure thereof, were of common convenience and necessity. But the legislature are bound to no particular form. Represent-

ing the authority of the commonwealth, if the act done is
within the scope of their authority, the mode of doing it is
sufficient, if done in any mode that is intelligible.   The act
itself is sufficient evidence of the opinion and judgment of
the legislature that the public use contemplated would be
of public convenience." See, also, *Secombe* v. *Railroad Co.*,
*23 Wall. 108.*  Special charters were the bulwark of mono-
polies.   The people, by the amendments to the constitution
before referred to, undoubtedly intended to open wide the
way to competition in railroad enterprises in this state.
The legislature in 1875 passed the general railroad law in its
present form; it was approved in April of that year.
Though amended otherwise, it has remained unchanged in
the feature now under consideration ever since, a period of
more than six years.   At least one important line of rail-
road has been built under it.   If the law is objectionable in
the particular complained of in this case, the remedy, in
my judgment, is not with the judiciary, but with the people,
through the legislature.

There is a remedy at law, by *certiorari*, for the land
owner, not only against essential irregularities in the pro-
ceedings of corporations under the general railroad law
affecting their right to condemn, but, also, against unwar-
ranted invasion of his rights where the proceedings are
otherwise valid, as where the attempt is made to take more
land than the company is authorized to take, and the con-
stitutionality of the law itself may be inquired into on
*certiorari.   State, M. & E. R. R. Co. pros.* v. *Hudson Tunnel
Co., 9 Vr. 548; Vail* v. *M. & E. R. R. Co., 1 Zab. 189;
Doughty* v. *Somerville & Easton R. R. Co., 1 Zab. 442; State,
Mayor &c. of Jersey City pros.* v. *Montclair R. R. Co., 6
Vr. 328.*

But the remedy at law is not always adequate.   It would
obviously not be so where the injury apprehended is an
unlawful competition in the exercise of chartered privileges
wherever the complainant in the given case would be
unlawfully injured in the exercise of a franchise by an

enterprise based on an unconstitutional enactment, but which might be carried on without recourse to the exercise of any extraordinary power, as, for example, an unauthorized competing railroad for which all needed facilities might be obtained by private contract, and without recourse to condemnation or interference with the property of the complaining company. *Penna. R. R. Co.* v. *National R. Co., 8 C. E. Gr. 441; Rar. & Del. Bay R. Co.* v. *Del. & Rar. Canal Co., 3 C. E. Gr. 546*, are apposite illustrations. There the enterprises were enjoined *ab initio*. Where the prohibitory power of this court is invoked to prevent irreparable injury justly apprehended from proceedings under an enactment the constitutionality of which is denied by those who are to be affected by it, it is the manifest duty of the court to enter upon the consideration of the question, and, if the conclusion reached is against the validity of the law, to grant relief; but otherwise if it is merely doubtful whether the law is constitutional.

The complainants have a valuable franchise, under the charter of the company, and have a right to be protected in their enjoyment of it against unauthorized competition. The right to build and use a railroad for public use is a franchise the right to which can be derived from the state alone. Such franchise is, in its nature, and in the absence of express provision to the contrary, exclusive, except against the state, and those invested with a privilege which interferes, by way of competition, with the enterprise, and a competing road established without legislative authority, will be enjoined. *Rar. & Del. Bay R. Co.* v. *Del. & Rar. Can. Co., 3 C. E. Gr. 546; Pennsylvania R. R. Co.* v. *National R. Co., 7 C. E. Gr. 441.*

Said the chief-justice, in the opinion of the court in the first-mentioned case: "A franchise to build a railroad for public use, and to take tolls, is property the title to which is held from the sovereign, and, like every other thing susceptible of private ownership, it must, of necessity, be under the protection of the law. Unless it can be shown that this

species of right is altogether anomalous in its character, and is under the control of exceptional rules, a wrongful invasion of such right cannot but be followed by a legal vindication.     *     *     *     *     It seems to me it must be admitted that the rule of law apposite to the matter now in hand, is entirely settled. When, therefore, the complainants obtained from the state the right to establish their road, I think that, by the intrinsic force of such grant, such franchise was exclusive against all persons but the state. A competing road, set up without a legislative license, is a fraud upon such grant, and is a plain public nuisance." See, also, *Edgewood R. R. Co.'s Appeal, 79 Pa. St. 257.*

It is obvious that, under the operation of the general railroad law, the aid of the courts must be accorded to protect those who legitimately enjoy railroad franchises, as well as property owners, against the abuse of the law by those who, under cover of its provisions, illegitimately seek to avail themselves of the extraordinary power which it confers. It is within the province of this court to grant such protection. *Del. & Rar. Bay R. Co.* v. *Del. & R. Co.*; *ubi supra; Bonaparte* v. *Cam. & Am. R. R. Co., Bald. C. C. 205; Giesy* v. *Cincinnati &c. R. R. Co. 4 Ohio St. 308.*

It is undoubtedly within the power of this court (and it is its duty), where an abuse of the general railroad law is attempted by the unlawful application of its provisions to a private use, to restrain the unauthorized proceedings.

On the case as made by the bill and affidavits, the enterprise in question appears to be unlawful. A corporation cannot in its own name subscribe for stock, or be a corporator under the general railroad law; nor can it do so by a simulated compliance with the provisions of the law through its agents as pretended corporators and subscribers of stock. Though five of the corporators of the National Docks Railway Company, as directors, by their affidavit appended to the articles of association, swear that the amount of the capital stock required by law to be subscribed and paid in

good faith, has been in good faith subscribed and paid in cash to the directors, and that it is intended in good faith to construct and to maintain and operate the road, and that the whole of the stock ($300,000) has been subscribed, and $6,000 thereof paid in good faith to the directors in cash, the president of the Storage Company, by his affidavit put in by the National Docks Railway Company, swears that the Storage Company procured the several corporators and stockholders of the National Docks Railway Company to organize that company, and that it was done in the interest of the Storage Company, which has agreed and expects to advance out of its own funds all the means necessary to purchase the right of way and construct the road. Of the seven corporators, it appears that the majority are either officers or employes of the Storage Company. One is its president, another its treasurer, another an engineer in its employ, another its book-keeper, and another its assistant book-keeper. The stock is divided into 3,000 shares of $100 each. Of those shares 2,982 were subscribed by the president of the Storage Company, 3 by the treasurer, and 3 by each of the three employes. So that all the stock except 6 shares was subscribed by officers or employes of that company. An attempt by a corporation thus to avail itself unlawfully of the general railroad law to build a railroad will, on complaint of a party injured, be enjoined as an abuse of the law.

But, further, though by a supplement to its charter (*P. L. 1869 p. 893*) power is given to the Storage Company to construct a railroad from its depots to some point on the New Jersey Railroad, between the Hudson and Hackensack rivers, and the power of condemnation is thereby granted, it has not availed itself of the privilege thereby conferred, perhaps because in exercising the power of condemnation it might be met by the objection that the railroad is for private use merely. By the avowal contained in the affidavit of its president, it appears that the projected road, which is to be from its docks to the line of the New Jersey Railroad, is

merely its own private enterprise; that the seven corporators are merely its agents, and that it is by this device attempting to do indirectly what it could not do directly, and to effect by means of the general law a purely private purpose which it could not effect under the special authority which the legislature attempted to confer upon it by the supplement to its charter. As far as appears, the road is designed to answer no public use, but merely a private one; is to be merely the means by which the Storage Company is to provide transportation for its merchandise from the line of the New Jersey Railroad, across the Central Railroad, to its depots.

The proceedings should be stayed. There should, therefore, be a preliminary injunction.